UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

FRANCES ALEXANDER,

                                         Plaintiff,

                                                                                                                                                          Case # 19-CV-762-FPG

v.

                                                                                                                                                         DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                         Defendant.
_____

## INTRODUCTION

Plaintiff Frances Alexander brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 13. For the reasons that follow, the Commissioner's motion is GRANTED, and Alexander's motion is DENIED.

## BACKGROUND

In April 2015, Alexander applied for SSI under Title XVI of the Act with the Social Security Administration (the "SSA"). Tr.[1] 12, 144. She alleged disability due to a learning disability, difficulty reading and writing, back issues, asthma, and anemia. Tr. 14, 165. In October 2017, Alexander and a vocational expert appeared at a hearing before Administrative Law Judge Hortensia Haaversen ("the ALJ"). Tr. 12, 22. On April 16, 2018, the ALJ issued a decision finding that Alexander was not disabled. Tr. 12–22. On April 10, 2019, the Appeals Council denied

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 7.

Alexander's request for review. Tr. 1–3. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). It is not the Court's "function to determine *de novo* whether [claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks omitted).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470–71 (1986); 20 C.F.R. § 416.920(a). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(a)(4)(ii), (c). If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." *Id.* If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(a)(4)(iii). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations caused by his or her collective impairments. *See id.* § 416.920(a)(4)(iv), (e)–(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits claimant to perform the requirements of his or her past relevant work. *Id.* § 416.920(a)(4)(iv). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(a)(4)(v), (g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotation marks omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Alexander's claim for benefits using the process described above. At step one, the ALJ found that Alexander had not engaged in any substantial gainful activity since her application date. Tr. 14. At step two, the ALJ found that Alexander had three severe

impairments: borderline intellectual functioning, curvature of the spine, and asthma. *Id.* At step three, the ALJ found that these impairments did not meet or medically equal any Listings impairment. *Id.*

Next, the ALJ determined that Alexander had the RFC to perform light work with specific limitations. Tr. 16. Specifically, the ALJ found that Alexander could: lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand and walk for up to six hours and sit for up to six hours in an eight-hour work day; perform simple job tasks and interact appropriately with coworkers and supervisors; and adapt to changes in a routine work setting. *Id.* The ALJ also concluded that Alexander should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dust, gases, and poor ventilation. *Id.* The ALJ further found that Alexander was limited to low stress positions defined as only occasional decision making and "to jobs with a reasoning code of one." *Id.* At steps four and five, the ALJ found that Alexander did not have past relevant work but that there were jobs that existed in significant numbers in the national economy that she could perform. Tr. 20–21. The ALJ therefore found that Alexander had not been disabled from her application date through the date of the decision. Tr. 22.

**II.     Analysis**

Alexander argues that the ALJ improperly relied on a stale medical opinion of a consultative examiner, improperly rejected a treating physician's opinion, and improperly formulated Alexander's RFC based on her own lay opinion. ECF No. 9-1. The Court addresses each argument below.

    *A.     Consultative Examiner's Opinion*

Alexander argues that the ALJ improperly relied on the stale opinion of a consultative examiner. ECF No. 9-1 at 10–15. The Court disagrees.

"[I]t is well-settled that a consulting . . . examiner's opinion may be given great weight and may constitute substantial evidence to support a decision." *Colbert v. Comm'r of Soc. Sec.*, 313 F. Supp. 3d 562, 577 (S.D.N.Y. 2018). "An ALJ has discretion to weigh the opinion of a consultative examiner and attribute the appropriate weight based on his review of the entire record." *Guerra v. Comm'r of Soc. Sec.*, No. 16-CV-991, 2018 WL 3751292, at *7 (W.D.N.Y. Aug. 7, 2018). However, "[a] medical opinion may be stale if it does not account for the claimant's deteriorating condition." *Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 646 (W.D.N.Y. 2020) (internal quotation marks omitted).

Here, Donna Miller, D.O. examined Alexander and submitted an opinion to the SSA regarding Alexander's functional capacity. Tr. 243–46. Alexander appear to be in no acute distress, had a normal gait, had no difficulty walking on her heels and toes, could squat seventy-five percent of normal, had a normal stance, used no assistive devices, needed no help changing for exam or getting on and off the exam table, and was able to rise from her chair without difficulty. Tr. 244. Dr. Miller diagnosed Alexander with chronic low back pain, mild scoliosis, asthma, and tobacco abuse. Tr. 245. Dr. Miller opined that Alexander "should avoid dust, irritants, and tobacco exposure," which might exacerbate her asthma, and that she "has mild limitation with heavy lifting, bending, and carrying." Tr. 246.

Alexander argues that Dr. Miller's opinion was rendered stale by Alexander's intervening back surgery, which took place about ten months after Dr. Miller rendered her opinion. Tr. 246, 319–30. She cites numerous cases where medical opinions were rendered stale by a claimant's deteriorating condition. *E.g.*, *Moon v. Comm'r of Soc. Sec.*, No. 17-CV-1312, 2019 WL 2240235, at *3 (W.D.N.Y. May 24, 2019) ("While the mere passage of time does not necessarily render a medical opinion outdated or stale, subsequent surgeries *and* treatment notes indicating a claimant's

5

condition has deteriorated may." (emphasis added)). A subsequent surgery, however, is insufficient, standing alone to render a medical opinion stale. *Santiago v. Comm'r of Soc. Sec.*, No. 19-CV-2051, 2020 WL 1922363, at *5–6 (S.D.N.Y. Apr. 21, 2020) (holding that medical opinions were not rendered stale by intervening surgery where there was "no evidence of an intervening event (such as a new injury) or significant deterioration"); *Kidd v. Comm'r of Soc. Sec.*, No. 18-CV-217, 2019 WL 1260750, at *3–4 (W.D.N.Y. Mar. 19, 2019) (holding that claimant's knee surgery did not show that his condition had worsened and did not render medical opinion stale).

At minimum, Alexander must show some deterioration in her condition. *Lesanti*, 436 F. Supp. 3d at 646. She has failed to cite to any such evidence. To the contrary, Alexander herself testified that her pain levels were consistent before and after the surgery. Tr. 37–38. Similarly, her medical records confirm that her back pain remained stable before and after the surgery. Tr. 308. Less than four months after her surgery, she reported feeling "well," had no complaints, and reportedly "had no significant changes in health status over the past six months." Tr. 349.[2] Accordingly, Alexander has failed to show that Dr. Miller's opinion was stale.

---

[2] Alexander argues that the ALJ was not qualified to interpret raw medical data to determine whether Alexander's condition deteriorated following her surgery. ECF No. 14 at 2–3. The cases cited by Alexander stand for the proposition that an ALJ is not qualified to interpret raw medical data for purposes of formulating a claimant's RFC. *E.g.*, *Milliken v. Berryhill*, No. 16-CV-297, 2017 WL 3208635, at *18 (W.D.N.Y. July 28, 2017). It is less clear that that principle applies to the more straightforward determination of whether a medical opinion has been rendered stale by a claimant's deteriorating condition. But even assuming the principle applies to the determination of whether Dr. Miller's opinion was stale, as with her RFC determination, the ALJ was "entitled to rely not only on what the record says, but also on what it d[id] not say." *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983). Alexander has identified no evidence suggesting a deterioration in her condition following her surgery.

B.  *Treating Physician's Opinion*

Alexander asserts that the ALJ improperly weighed the opinion of her treating physician and should have contacted him to clarify his opinion instead of discounting it. ECF No. 9-1 at 15–19. The Court disagrees.

An ALJ must give a treating physician's opinion regarding the nature and severity of a claimant's impairments controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) ("The SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant."). An ALJ may discount a treating physician's opinion if it does not meet this standard, but she must "comprehensively set forth [her] reasons" for doing so. *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. § 416.927(c)(2) (noting the SSA "will always give good reasons" for the weight afforded to a treating source's opinion).

When a treating physician's opinion is not given controlling weight, an ALJ considers the following factors to determine how much weight it should receive: (1) whether the source examined the claimant; (2) the length, nature, and extent of the treatment relationship; (3) whether the source presented relevant evidence to support the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether a specialist rendered the opinion in his or her area of expertise; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(1)–(6). If the ALJ fails to explicitly consider "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist,"

7

she commits "procedural error warranting remand unless a searching review of the record assures the reviewing court that the substance of the treating physician rule is not traversed." *Guerra v. Saul*, 778 F. App'x 75, 76–77, 76 n.2 (2d Cir. 2019) (alteration in original). In other words, a searching review of the record must show that "the ALJ has provided 'good reasons' for [her] weight assessment." *Id.* at 77.

Here, the ALJ failed to explicitly consider all of the required factors, Tr. 19–20, but a searching review of the record shows that the ALJ provided "good reasons" for the weight she assigned to Alexander's treating physician.

On a New York State Office of Temporary and Disability Assistance check-box form, John Sauret, M.D., submitted an opinion that Alexander was very limited in lifting, carrying, pushing, pulling, bending, and using stairs or other climbing. Tr. 258–59. He also opined that Alexander was moderately limited in walking and standing but there was no evidence of limitations in sitting. Tr. 259. Dr. Sauret provided no narrative in explaining these limitations but instead curtly opined that "maybe [Alexander] can do a sit down job." *Id.* Dr. Sauret is Alexander's family doctor; he treats her for her asthma. Tr. 27. The ALJ explained that she assigned Dr. Sauret's opinion "little weight" because (1) the opined limitations were "vague, undefined, and not offered in vocationally relevant terms;" and (2) the opinion was inconsistent with Dr. Sauret's own treatment notes. Tr. 19–20.[3]

---

[3] The ALJ also rejected Dr. Sauret's opinion because it was offered shortly after Alexander underwent back surgery and it was unclear if the severity of the noted impairments related to her recovery from surgery or were a reflection of her abilities once "she reached maximum medical improvement." Tr. 20. This reason does not support the ALJ's conclusion because the ALJ mischaracterized the relevant evidence. Dr. Sauret checked a box indicating that he expected Alexander's disability restrictions to be "permanent." Tr. 259. There is accordingly no basis to conclude that the opined limitations were expected to apply only in the period in which Alexander was recovering from surgery. Nevertheless, substantial evidence supports the ALJ's decision to afford Dr. Sauret's opinion less than controlling weight.

It is perfectly acceptable for an ALJ to discount a medical opinion due, in part, to its vagueness or ambiguity. *Guerra*, 778 F. App'x at 77 (holding that it was acceptable for ALJ to assign less than controlling weight to treating physicians' opinions because, *inter alia*, the opinions were vague); *see also Pellam v. Astrue*, 508 F. App'x 87, 89–90 (2d Cir. 2013) (summary order) (holding that ALJ was justified in refusing to adopt many of consultative examiner's conclusions where they were "relatively vague"). Here, Dr. Sauret's opinion was indeed vague and ambiguous in that the form provided no definition for the "moderately" or "very" limited options selected by Dr. Sauret. Tr. 259. Further, his narrative explanation is limited entirely to the speculation that "maybe she can do a sit down job"[4] and the note that he expected her symptoms to last twelve months due to the "chronicity of symptoms." *Id.* Accordingly, the ALJ's finding that the opinion was vague is well-supported.

Further, the ALJ was entitled to discount Dr. Sauret's opinion based on its consistency with the record as a whole. *See, e.g.*, *Freeman v. Comm'r of Soc. Sec.*, No. 17-CV-6862, 2018 WL 6605666, at *6 (W.D.N.Y. Dec. 17, 2018) ("[T]he ALJ did not err when she discounted [the treating physician]'s opinion based on its inconsistency with other record evidence."); 20 C.F.R. § 416.927(c)(4) (noting that an ALJ will give more weight to an opinion that is consistent with the record as a whole). Here, the ALJ correctly explained that Dr. Sauret's opinion was inconsistent "with the benign signs contained in [Dr. Sauret's] treatment notes." Tr. 20; *see, e.g.*, Tr. 261, 268, 339, 349. Further "good reason" exists for affording the opinion less than controlling weight to the extent it conflicts with the opinion of Dr. Miller. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.

---

[4] Alexander argues that this statement must be read as an opinion that she is limited to sedentary work. ECF No. 9-1 at 17–18. Dr. Sauret's statement, however, is equivocal, and the Court doubts that his remark represents a reasoned consideration of the SSA's various exertional levels. Given that Dr. Sauret provides no explanation as to what he meant by "a sit down job," Tr. 259, the ALJ was not required to interpret Dr. Sauret to mean that Alexander is only capable of meeting the SSA's highly specific definition of sedentary work, *see* 20 C.F.R. § 416.967(a).

2004) ("[T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."); *see also Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (holding that ALJ was free to reject treating physician's opinion based upon the physician's own treatment notes where other medical opinion evidence supported the ALJ's conclusion).

Alexander argues that the ALJ should have contacted Dr. Sauret for clarification if she believed the opinion was too "vague or inconsistent" to be properly evaluated. ECF No. 9-1 at 18–19. But "[t]he mere fact that medical evidence is conflicting or internally inconsistent does not mean that an ALJ is required to re-contact a treating physician." *Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012) (summary order). As long as the relevant evidence was sufficient for the ALJ to make a decision, she was under no obligation to recontact Dr. Sauret for a clarification of his opinion. 20 C.F.R. § 416.920b(b)(1) (noting that, where evidence is "ambiguous," the ALJ "will consider the relevant evidence and see if [she] can determine whether you are disabled based on the [available] evidence"); *see also Rolon v. Comm'r of Soc. Sec.*, 994 F. Supp. 2d 496, 504 (S.D.N.Y. 2014) ("[T]he ALJ must seek clarification and additional information from the physician, as needed, to fill any clear gaps before rejecting the doctor's opinion." (internal quotation marks omitted)). As discussed below, substantial evidence supported the ALJ's RFC determination. Accordingly, remand is not warranted based either on the ALJ's treatment of Dr. Sauret's opinion or the ALJ declining to contact Dr. Sauret.

*C.     RFC Determination*

Alexander argues that the ALJ's RFC determination was unsupported by substantial evidence and instead premised on the ALJ's own lay opinion. ECF No. 9-1 at 19–22. The Court disagrees.

A claimant's RFC reflects what she "can still do despite . . . her limitations." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (internal quotation marks omitted). An RFC determination does not have to "perfectly correspond" with the medical source opinions cited in the ALJ's decision; rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). But "[a]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (internal quotation marks omitted). In other words, an ALJ's ability to make inferences about the functional limitations caused by an impairment does not extend beyond that of an ordinary layperson. "While an ALJ may render common sense judgment[s] about functional capacity, she must avoid the temptation to play doctor." *Agostino v. Comm'r of Soc. Sec.*, No. 18-CV-1391, 2020 WL 95421, at *3 (W.D.N.Y. Jan. 8, 2020) (alteration in original) (internal quotation marks omitted).

Here, Alexander claims that it is unclear how the ALJ determined that she could perform "light work" if she was limited to lifting and carrying up to twenty pounds occasionally and ten pounds frequently and standing, walking, and sitting up to six hours in an eight-hour work day. ECF No. 9-1 at 19–22; Tr. 16. The ALJ gave "great weight" to Dr. Miller's opinion. Tr. 19. The ALJ concluded that Dr. Miller's finding that Alexander only "has a mild limitation with heavy

11

lifting, bending, and carrying" supported her exertional determination. Tr. 19–20, 246. Given that that opinion is not stale, the ALJ did not err in translating Dr. Miller's opinion to a limitation of light work. *Lewis v. Colvin*, 548 F. App'x 675, 677–78 (2d Cir. 2013) (summary order) (affirming light work RFC where consultative examiner opined that claimant had "mild limitations for prolonged sitting, standing, and walking and . . . should avoid heavy lifting[] and carrying" (internal quotation marks omitted)); *see also Hazlewood v. Comm'r of Soc. Sec.*, No. 12-CV-798, 2013 WL 4039419, *6–7 (N.D.N.Y. 2013) (affirming ALJ's determination that claimant could perform light work where supported by consultative examiner's opinion that claimant had only "mild limitations in carrying and sitting[] and mild to moderate limitations in walking, pushing, and pulling"). In "addition" to her light work restriction, the ALJ explained that Alexander should be limited to lifting and carrying up to twenty pounds occasionally and ten pounds frequently, but that limitation is largely consistent with a restriction to light work. Tr. 16; 20 C.F.R. § 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.").

In any event, the ALJ specifically supported the lifting and carrying restriction by pointing to Dr. Miller's findings that Alexander had mildly reduced range of motion in the lumbar spine. Tr. 19. Although Dr. Miller's opinion conflicted with Dr. Sauret's opinion in this area, Tr. 259 (noting that Alexander was "very limited" in lifting and carrying), it was the "ALJ's task to resolve genuine conflicts in the medical evidence." *McGill v. Berryhill*, No. 16-CV-4970, 2018 WL 1368047, at *10 (E.D.N.Y. Mar. 16, 2018).

Alexander argues that the ALJ erred in failing to specify how she determined that Alexander was limited to standing, walking, and sitting up to six hours in an eight-hour workday. Tr. 16–20. As with the lifting and carrying restriction, however, this "limitation" is not really an

added limitation at all. Rather, it is consistent with the ALJ's determination that Alexander can perform "light" work. The SSA provides that "a job is [considered light work] when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b). The SSA has further explained that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday[] [and that] [s]itting may occur intermittently during the remaining time." Social Security Ruling 83-10, 1983 WL 31251, at *6 (1983).

Accordingly, it appears that, because of the lifting and carrying restriction, which the ALJ adequately explained, the ALJ limited Alexander to light work. Such a limitation was adequately supported by Dr. Miller's opinion, which did not assess any limitations as to standing, walking, or sitting. The ALJ's inclusion of extra verbiage regarding standing, walking, and sitting that is consistent with light work does not somehow render her reliance on Dr. Miller's opinion improper. *See Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) (declining to remand where an ALJ made an RFC determination that may have been more restrictive than necessary).

The only evidence supporting a greater standing, walking, or sitting limitation is Alexander's testimony. She claims she is only capable of sitting for an hour or two, standing for ten minutes, and walking three blocks. Tr. 17, 30, 38–39. The ALJ, however, reasonably concluded that Alexander's statements about her symptoms were not entirely consistent with the medical and other record evidence. Tr. 17; 20 C.F.R. § 416.929(c)(3)–(4) (explaining that the ALJ is entitled to consider a variety of factors when she evaluates a claimant's statements about pain). As correctly pointed out by the ALJ, there are multiple medical records that appear to support mild impairments in this area. Tr. 18. Alexander was in no apparent distress and able to walk without assistance at a

hospital visit due to a fall shortly after her back surgery, Tr. 306, 308; thereafter, she reported feeling well and had no complaints at an appointment with Dr. Sauret, Tr. 349. There are multiple treatment notes throughout the record reflecting that Alexander was not in acute distress and had a "normal back" or gait. Tr. 224, 227–28, 231, 234–35, 238, 240–41, 298, 308, 339; *see Jeffery M. v. Comm'r of Soc. Sec.*, No. 19-CV-435, 2020 WL 3637646, at *9–10 (N.D.N.Y. July 6, 2020) (holding that medical notes showing that claimant was no in acute distress, had a normal gait, and did not need assistance getting on and off the exam table all supported the ALJ's assessment that claimant was able to walk and move consistent with light work).

In fact, Alexander has not identified any medical record that supports a greater restriction as to sitting, walking, or standing. In its review of the medical records, the Court only identified one medical record reflecting difficulty standing and walking: a pre-surgery note explaining that Alexander has "increased pain and symptoms with prolonged standing or prolonged walking." Tr. 326.[5] Even that note, however, is not inconsistent with the ALJ's RFC determination. The ALJ was "entitled to rely not only on what the record says, but also on what it d[id] not say." *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983). In this case, the record did not support greater restrictions than those found by the ALJ.

Alexander misplaces her reliance on cases in which no medical opinion supported the ALJ's findings or the ALJ credited a medical opinion and then failed to account for the opined limitations. *See, e.g.*, *Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (summary order) (remanding where ALJ relied on medical opinion that claimant would require "regular comfort breaks" for finding that claimant would be off task six minutes out of every hour but no evidence

---

[5] There are multiple treatment notes that report back pain generally, but the notes do not attribute Alexander's back pain to sitting, standing, or walking. Tr. 234, 237, 268, 269, 275–76, 281–82, 313. At least one note attributes her back issues to heavy lifting rather than sitting, standing, or walking. Tr. 234.

14

supported that specific limitation); *Perkins v. Berryhill*, No. 17-CV-6327, 2018 WL 3372964, at *3–4 (W.D.N.Y. July 11, 2018) (remanding where "record lack[ed] any medical opinion as to how [claimant]'s eye condition affect[ed] her ability to work" but ALJ still formulated a highly specific RFC limitation related to claimant's eye condition). For instance, in *Mariani v. Colvin*, the ALJ's RFC determination that claimant had fifty percent capacity to use his hand was contradicted by both the treating physician's opinion of total inability to use his hand and the consulting physician's opinion that his ability to use his hand was "intact." 567 F. App'x 8, 10 (2d Cir. 2014) (summary order). The Second Circuit explained that "[m]edical evidence at both ends of the spectrum . . . is not substantial evidence for a finding that the extent of the disability is fifty percent capacity." *Id.*

Here, however, the medical opinion evidence is not on both ends of the spectrum. Dr. Miller's opinion supports the conclusion that Alexander is not limited in this area, and Dr. Sauret's opinion is consistent with the ALJ's finding as to a sitting, standing, and walking limitation consistent with light work. Similar to Dr. Miller, Dr. Sauret opined that Alexander had no limitation in sitting. Tr. 259. Dr. Sauret did, however, opine that Alexander was "moderately limited" in walking and standing. *Id.* Such a limitation is not inconsistent with an ability to perform light work. "In fact, several courts have upheld an ALJ's decision that the claimant could perform light . . . work even when there is evidence that the claimant had moderate difficulties in standing or walking." *Cottrell v. Comm'r of Soc. Sec.*, No. 17-CV-6893, 2019 WL 201508, at *4 (W.D.N.Y. Jan. 15, 2019) (internal quotation marks omitted) (collecting cases); *see also Harrington v. Colvin*, No. 14-CV-6044, 2015 WL 790756, at *14 (W.D.N.Y. Feb. 25, 2015) (noting that some courts have found that "moderate limitations for sitting, standing and walking [are not] inconsistent with

15

a determination that the claimant can perform the requirements of light or medium work" (collecting cases)).

Alexander clearly disagrees with the ALJ's evaluation of the evidence; however, even if Alexander had cited evidence that substantially supports her position that she is disabled, the Court's task here is to decide whether substantial evidence supports the ALJ's decision, not Alexander's contrary position. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order). Here, "the ALJ's [RFC] analysis was reasonable and supported by substantial evidence." *Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) (summary order).[6]

---

[6] The Court acknowledges that there is some tension between this result and two of the cases cited by Alexander with respect to the appropriate interpretation of a consultative examiner's opinion that is silent as to a claimant's capacity in some exertional areas. *See Harrington v. Saul*, No. 18-CV-249, 2019 WL 3945775, at *3–4 (W.D.N.Y. Aug. 20, 2019); *Gorny v. Comm'r of Soc. Sec.*, No. 18-CV-6, 2018 WL 5489573, at *3–4 (W.D.N.Y. Oct. 29, 2018). These decisions may be read to suggest either (1) that, because Dr. Miller's opinion does not address Alexander's capacity to sit, stand, or walk, the opinion should not be interpreted as meaning that Alexander has no limitations in this area or (2) that the ALJ erred in applying all of the typical limitations associated with light work where the typical sitting, standing, and walking limitation should have been unnecessary if the ALJ accepted Dr. Miller's unspoken conclusion of no limitations in that area. The Court, however, need not resolve this issue. Because the Court finds that the ALJ could have reasonably translated Dr. Sauret's opinion of moderate limitations in walking and standing into the corresponding limitation here, that limitation is supported by the record and this case is distinguishable. In *Harrington*, the ALJ rejected the only two medical opinions in the record and the ALJ's sitting, standing, and walking limitation was unsupported by any opinion. 2019 WL 3945775, at *3–4. In *Gorny*, the ALJ's assessed an RFC of medium work with additional restrictions. 2018 WL 5489573, at *3. The additional limitations were not all consistent with medium work and were not supported by the record. *Id.* at *4. Further, unlike this case, the opinion of the claimant's treating physician contradicted the ALJ's medium work assessment. *Id.* at *3.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings, ECF No. 13, is GRANTED and Alexander's Motion for Judgment on the Pleadings, ECF No. 9, is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 22, 2020
       Rochester, New York

                                    HON. FRANK P. GERACI, JR.
                                            Chief Judge
                                  United States District Court